May it please the court, my name is David Chang, and I, along with fellow student counsel Allison Harms, represent the petitioner, Mr. Yuanku Li. Joining us this morning are supervising attorneys Gary Watt and Stephen Tolafield. Your honors, at this time I hope to reserve approximately two minutes of my time for rebuttal. Your honors, there's a couple of items that I would like to cover with the court this morning. First, I hope to convince the court that matter of JS was impermissibly, retroactively applied to Mr. Li. And additionally, your honor, even if matter of JS may be applied retroactively, that the immigration judge committed pure legal error when he failed to consider Mr. Li's evidence for the purpose for which it was offered, which was to prove Mr. Li's asylum claim. Your honors, in light of the government's recent 28J letter stating that this was a harmless error, I would like to start at this second issue, if this court will permit. Doesn't the government letter also say it's really not a retroactive application? Your honor, the government's response relies upon Landgraf and is a misinterpretation of Landgraf. Because in Landgraf, if a case or a new rule imposes new legal obligations, it represents a retroactive application. In this instance, your honors, at the time Mr. General's interpretation from matter of JS adds an additional requirement. Now Mr. Li needs to show that he has demonstrated other resistance and other harms to meet the new matter of JS standard. So thus it represents a retroactive application. Your honors, here this court should grant Mr. Li's petition for review, because the immigration judge failed to consider the evidence for the purpose of which Mr. Li offered, which was to prove or disprove his asylum claim. And instead, the immigration judge erred when it used it as the basis for an adverse credibility determination. In 2006, when Mr. Li filed for asylum, his application was tailored to the per se standard in which spouses were per se eligible for asylum. In 2008, the attorney general issued matter of JS and changed that standard. And all of a sudden, Mr. Li's once complete application now was incomplete. In 2009, he had the opportunity to amend his application, right? Your honor, Mr. Li did have the opportunity to amend his application at the immigration judge's hearing. But the immigration judge never considered Mr. Li's testimony for the purpose of whether it met or did not prove whether or not Mr. Li met the new matter of JS standard for asylum. Well, that's a different question of, you know, whether or not there was any prejudice from the retroactive application of the case, right? It's a different question. No, your honor. There was a prejudice here in this situation. Because what the immigrant The only prejudice you referred to so far is that he had already prepared his application, but then he had the opportunity to amend it. So what's the prejudice? The prejudice here, your honor, is that when Mr. Li's opportunity to amend it, it was at the immigration judge's hearing. And the immigration judge never considered Mr. Li's additional testimony as to whether or not it proved or disproved his asylum claim in light What specific testimony do you rely on for that statement? Your honor, it relies on the record on page 17 in which it shows that Mr. Li or the immigration judge used Mr. Li's testimony as a basis for an adverse credibility determination. Nowhere in the record does it show that the immigration judge considered Mr. Li's testimony for whether or not it proved or disproved his asylum claim. Go ahead. Finish your answer. Oh, your honor. And under this court's holding in Enay v. Holder, when a court fails to consider or the immigration judge fails to consider the evidence for the purpose for which it was offered, that constitutes a versatile error. Does it seem at all strange to you that the person who had the abortion is still in China? The husband is the one who's now claiming he's been terribly injured. No, your honor, because in this situation, Mr. Li was forced to escape from China after his wife's forced abortion to escape the Chinese authorities' persecution. And so here, there's nothing out of the ordinary with that. So there was not an adverse credibility finding as to the basic facts, right? That the wife had to undergo an abortion, that he went to the hospital and he escaped out the window. That part is not part of the adverse credibility finding. No, your honor. The I.J. found that credible. What was part of the adverse credibility determination was that the immigration judge at Mr. Li's hearing in 2009 elicited testimony from Mr. Li about his escape from the furniture factory. And then the immigration judge compared that testimony to Mr. Li's 2006 asylum application and noted that it wasn't included at that time. And so he used that as a basis for the immigration as an adverse credibility determination. However, at the time that Mr. Li filed for asylum in 2006, he didn't need to show anything beyond his wife's two forced abortions to qualify for asylum. My question then actually was related to that, and that is that he was threatened, well, he was hit once and threatened with sterilization. Is that right? Yes, your honor. And that's not, the I.J. did not make any adverse credibility ruling on that testimony, is that right? No, the I.J. found that credible, your honor. So my question then is that if you take his situation separate from his wife's, the BIA doesn't mention the threat of sterilization to him. Where does that leave us as a legal matter? Your honor, that is also an error here, because under 8 U.S.C. 1101 itself, an individual that has been threatened with a forced vasectomy or sterilization should also be considered under that statute. So your honor, that's why in this instance If that's the case that we can't tell from the record because it's not mentioned, and that is, that's his own personal fact about the threat of sterilization that doesn't relate to his wife, if we can't figure that out from the record, would it be remanded? What would be the remedy? Your honor, the immigration judge found that portion of Mr. Lee's testimony credible here. And so what this Court should do is remand to the BIA so that the BIA considers all of this information as to whether or not it proves or disproves his asylum claim, because the immigration judge never took those in consideration for whether or not it met the matter of J.S. standard. The immigration judge solely used that portion of Mr. Lee's testimony as part of an adverse credibility determination. And that's why this Court should at least at a minimum remand to the BIA to give Mr. Lee an opportunity to have that information considered as to whether or not it provides an eligibility for asylum. Now your honor, of course none of this matters if matter of J.S. were to be considered impermissibly retroactively applied. And this Court has traditionally applied the Montgomery Ward factors to determine if an agency's adverse credibility determination, or an agency's retroactive application of a statute is proper. Now both the government and Mr. Lee agree that factors 1, 4, and 5 are not in dispute. It's factors 2 and 3. Factor 2 looks at whether or not this is an abrupt departure from the previous standard. And factor 3 looks at whether or not Mr. Lee has detrimentally relied. In this instance, both of those factors favor Mr. Lee. Factor 2 represents an abrupt departure because matter of CYZ, the standard which provided per se eligibility, was promulgated by the BIA since 1997. So there was almost 10 years worth of precedent of providing spouses with per se eligibility before Mr. Lee filed his claim for asylum. But what do you do about the fact that in 2004 and 5, before J.S. in 2008, you have the Second and Third Circuits taking a different position. And so does that make factor 2, whether there's an abrupt departure or whether it's filling a void in an unsettled area, does that really make this an unsettled area? Your Honor, I see that my time is up. Can I reciprocate? We'll give you some rebuttal time. Your Honor, this Court should not look to the state of the law in other circuits. This Court should look to the state of the law in the Ninth Circuit. This Court in Garfias Rodriguez noted that there was a six-year dialogue between the BIA and the Ninth Circuit in making a determination that the law was in flux. Here there is no such, the law wasn't in a state of flux here in the Ninth Circuit because at the time Mr. Lee filed for asylum, this Court's precedent, this Court had adopted the eligibility, the per se eligibility standard. He filed within the Ninth Circuit his initial application? Yes, in Los Angeles. And the law was in He v. Ashcroft in 2003. This Court did not change the law until it adopted the new matter of J.S. standard in John v. Holder in 2010. Your Honor, I would like to reserve the remainder of my time for rebuttal. You may. Thank you, Your Honor. Good morning, Your Honors. May it please the Court? My name is Jessica Malloy and I represent the United States Attorney General on this matter. Your Honors, after a full and fair opportunity to present his claims at a hearing to the immigration judge, Lee failed to prove his case. He failed to establish that the harm he suffered in the past rose the level of persecution, and he failed to provide credible testimony or country conditions evidence that would establish he does have a well-founded fear of persecution. And therefore, this Court should deny the review petition in this matter. Can we go to the issue that troubles me, and that is, on his own accord, he has testimony that was deemed credible with respect to the threat of sterilization. And on the flip side, with respect to threat of abortion, we've determined that that is sufficient, usually in terms of proving past persecution. But we don't see anything in the BIA that addresses his own personal underlying claim. Why isn't that something we should at least send it back and let the BIA sort that out? Well, as a preliminary matter, the Court would review the Board's decision in conjunction with the immigration judge's decision. As the Board did rely on the immigration judge's findings of facts in this case, page 3 of the record, it does say that it's not finding it clearly erroneous. It's going to defer, to quote it directly, to the immigration judge's findings in this case. And the immigration judge, as you noted, did find that he did was threatened with sterilization. And on page 20 of the record, the immigration judge said, and here I can quote, said, I am looking at the harm that he said he received. That would include being threatened with sterilization. And the I.J. elaborated he was hit once and escaped. These facts lead to the Court to believe that he has not established past persecution. And that's considering all of the harm that he did testify to and that he was found credible to testify to. And it doesn't say, if you read everything in the BIA, there's nothing in there that talks about his sterilization. There's a reference to matter of J.S. with respect to the wife, but there's nothing in there that talks about him. And this is now it's kind of transformed itself into his claim, not a piggyback to his wife. Is that fair? It does need to be his own claim of past persecution, as matter of J.S. is applicable in this case. But taken together, as this is a decision the Court is reviewing, both the board and the immigration judge's decision, it's important to examine page three of the record, where the board says it's deferring to the factual findings of the I.J. unless they're clearly erroneous. And the board did not. Well, the factual findings of the I.J. is that he was credible on that point, but he was not credible on that point. So isn't then it's a legal judgment as to whether those facts rise to the level of past persecution, correct? Yes, that's correct. And BIA does not defer to the I.J. on that point. Well, actually, Your Honor, on page four of the record. No, no, let's answer that first. In other words, you don't defer on legal matters, correct? It's factual matters. Yes, Your Honor. But on page four of the record, it's important to note that at the end, the board says we agree with the immigration judge that the respondent did not demonstrate past persecution, based on a totality of the circumstances. And it cites to that page in the record where the I.J. makes that decision, and where the I.J. cites to all of the harm that he testified to experiencing in the past. And so the board is considering the I.J.'s analysis, which was not threatened with sterilization. So this information was considered. Regarding his well-founded fear of persecution, Mr. Lee did not testify credibly. As he concedes, this information was omitted from his declaration and his application. The fact that he testified that he was hiding in a furniture factory for seven months after he escaped from the hospital, this information was not provided in the application or declaration, even after he was given an opportunity, which he actually took advantage of, to amend his declaration and his application. One omission is sufficient. And the country conditions evidence, as evidenced in the country report, do not establish otherwise that he would have a well-founded fear of persecution. There's no evidence in the country report, and the agency did not selectively read from that report in order to make the determination that there wasn't a well-founded fear or a clear probability of torture in the future. Your Honor, do you have any questions regarding matter of J.S.? Yes, I do. Has the board expressly considered whether J.S. should be applied retroactively? The attorney general's decision in issuing matter of J.S. explained that this was the law as it always existed. And so it's not ‑‑ it's a tricky question what it means to be retroactive. But the attorney general said this has always been the law. And the attorney general's interpretation of the law ‑‑ Well, let me put it this way. Has the BIA ever cited that language and then concluded, therefore, it's okay to apply retroactively? I can't say that that exact statement has been held by the board. All right. Do you know of any cases now pending before the BIA that raises that question? Not directly on point. The only published decision outside of the board's providence would be in the 11th Circuit, new, citing our briefs. That's the only one that said it retroactively. It is permissible to apply it retroactively, because it's not really a retroactive application. It's not a change in the law. But it's ‑‑ that's not important in this case. Wait a minute. When you say it's not really a retroactive application, is that because of the attorney general's explanation that it's only a clarification? Is that why you say that or some other reason? There's a few reasons. One, because it is, as the 11th Circuit determined in new, it's not a change in the law. It's an articulation of what the law always was. And as this court has found in Marmolejo Campos in 2005, interpretations by the attorney general are precedential. And that's also supported by Neguse, the Supreme Court's decision in Giri Giri, 1103A. The agency is charged with the administration of immigration laws. But that ‑‑ there's a caveat. It's provided, however, that the determination in ruling by the attorney general with respect to all questions of law shall be controlling. But again, that's really not an issue in this case. Because as was pointed out earlier, the legal consequences of matter of JS only apply to events that happened after matter of JS was issued. They only apply to whether or not he can satisfy on his own claim that he is eligible for asylum and withholding of removal and protection under CAT. And in having the opportunity to amend his application and his declaration, and having the opportunity to testify before the immigration judge, it's really misconstruing the record to say he wasn't given that opportunity. Because ‑‑ Well, because of that, it's your position that because these proceedings took place after JS was on the record, it's not ‑‑ it's not truly a retroactive application. Is that what you're saying? It's because the proceedings took place after and because he testified to the completion, the truthfulness, the accuracy, and the completion of his application and declaration after matter of JS was ‑‑ Even though the events to which he testified and the events which do or do not give rise to asylum occurred after matter of JS, the years before. Yes. There's no legal ‑‑ there's no proposition or case on point that would say when a rule should be applied depend on when the events that occurred that provide eligibility for asylum or withholding of removal. And there's no legal ‑‑ no legal case on point that would say that the application's filing deadline would be when the line is drawn for a retroactive application. It's ‑‑ the court takes a common sense approach here. And here the common sense says the individual applied, yes, under the matter of JS, before matter of JS, but after matter of JS was issued, he was appearing before the court, given the opportunity in an act of administrative grace from the immigration judge to supplement his declaration, his application, and he made actually an amendment to that case, to his declaration, chose not to make any more. And this is important because on page 100, and I see my time is up, I'll just wrap up briefly, page 100 and 101 of the record, his attorney acknowledges there's a new law here. And this is after his attorney has asked for a grav approach to his case, meaning he wasn't looking to buttress his claims. He thought what was in his declaration in asylum application was  true, and he was able to get the claim. He thought what was in his declaration was true, and he was able to get the claim. Thank you. If there are no further questions, the government respectfully requests that this review petition be denied. Thank you. Thank you. I can't say anything in 30 seconds, so we'll give you a minute, two minutes rebuttal. What this court should focus on is that Mr. Lee, his application was complete, and the government never provided Mr. Lee with the opportunity to have his information considered for the purpose for which it was offered. Mr. Lee's application was complete in 2006. It wasn't incomplete until the government passed matter of JS in 2008. And then the immigration judge at the time, Mr. Lee, was not aware that the immigration judge had included in his 2006 application. And so the immigration judge used that as an adverse credibility determination on Mr. Lee instead of using that information as to whether or not it proved or disproved Mr. Lee's case. What you're basically saying is that even if it's retroactive, it would be unfair to bootstrap the credibility finding when you went in with one proposition and came out with another? Yes, Your Honor, because the government here is saying that Mr. Lee is a harmless error because Mr. Lee had the opportunity to testify. But here at the very moment Mr. Lee had to testify, the government used the information that he was trying to include to meet the matter of JS standard as a basis for an adverse credibility determination instead of considering it for the purpose for which it was offered. And under this court's previous holdings, that represents reversible error. Thank you. The case just argued. Lee v. Holder is submitted. I do want to thank Mr. Chang, Mr. Watt, and the school for the pro bono representation. The court appreciates the pro bono representation. I know also the Attorney General appreciates having well-reasoned briefs to respond to. So I also thank you, Ms. Malloy, for your argument. This case is submitted and we'll next hear argument in Kieran v. Nevada.
judges: Farris, Tashima, McKeown